**STATE of Minnesota, Respondent,**

v.

**Gerald E. HOUSTON, Appellant.**

No. A04–324.

Court of Appeals of Minnesota.

Dec. 7, 2004.

Mike Hatch, Attorney General, Thomas R. Ragatz, Assistant Attorney General, St. Paul, MN; and Kathleen A. Heaney, Sherburne County Attorney, Arden Fritz, Assistant Sherburne County Attorney, Elk River, MN, for respondent.

John M. Stuart, State Public Defender, Davi E. Axelson, Assistant State Public Defender, Minneapolis, MN, for appellant.

Considered and decided by LANSING, Presiding Judge; TOUSSAINT, Chief Judge; and CRIPPEN, Judge.

## O P I N I O N

CRIPPEN, Judge.*

In December 2003, this court affirmed the conviction and sentence of appellant

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Gerald Houston for attempted controlled substance crime in the first degree, methamphetamine manufacture, and one count of controlled substance crime in the fifth degree, possession. *State v. Houston,* No. C5-02-584, 2002 WL 31892561, *6 (Minn. App. Dec.31, 2002). In a subsequent post-conviction proceeding, appellant asserts, *inter alia,* that the cause of the upward durational departure must be scrutinized under *Blakely.* Because *Blakely* does not have retroactive effect in the case and because there is no merit in the other claims stated by appellant, we affirm the district court's denial of appellant's post-conviction petition.

## FACTS

Appellant was charged after a search of his car revealed several items associated with the manufacture of methamphetamine in the trunk of the vehicle. His convictions occurred after a jury trial. The district court determined that appellant met the criteria of the career-offender statute, Minn.Stat. § 609.1095, subd. 4 (2002). Appellant was sentenced on January 11, 2002, and subsequently filed his direct appeal, resulting in the 2003 decision of this court. Four months later, appellant initiated this post-conviction proceeding.

Although the district court determined in 2002 that the presumptive sentence for appellant's offenses was six and a half years, the court relied on the presentence investigation report to determine that appellant was a career offender, and sentenced him to the statutory maximum of 240 months (20 years). Appellant's crimi-

nal history included six prior felony convictions dating back 20 years. Five of appellant's prior convictions involved the possession, sale, or manufacture of controlled substances. The court noted that appellant left California without permission from his parole officer and never successfully completed any period of parole or probation. Additionally, the court took note of a 1981 burglary conviction, which it considered in the career-offender analysis.

## ISSUES

1. Is appellant entitled to sentencing relief under *Blakely* in a collateral attack initiated four months after the finality of his conviction and sentence?

2. Given the scope of what was decided or could have been decided when appellant's claims were considered in an earlier appeal, is he entitled to relief on his complaint that his sentence was excessive?

## ANALYSIS

### I.

In *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the United States Supreme Court held that an upward sentencing departure is unconstitutional unless the facts upon which the departure was based were admitted by the defendant or found beyond a reasonable doubt by a jury. *Blakely,* —— U.S. at ——, 124 S.Ct. at 2537. Appellant contends that under *Blakely,* he was entitled to a jury trial on the factors employed to increase his sentence.[1] Because one of

Minn. Const. art. VI, § 10.

1. Under *State v. Knaffla,* 309 Minn. 246, 252, 243 N.W.2d 737, 741 (1976), once a direct appeal has been taken, all matters raised in it, and all claims known but not raised, will not be considered in postconviction proceedings. However, fairness requires substantive review of a postconviction claim if the petitioner did

not "deliberately and inexcusably" fail to raise it on direct appeal. *Roby v. State,* 531 N.W.2d 482, 484 (Minn.1995) (citation omitted). Because our decision in *State v. McCoy,* 631 N.W.2d 446, 450–51 (Minn.App.2001), limited the *Apprendi* holding to sentences that literally exceed the "statutory maximum," we are satisfied that appellant did not deliberate-

the grounds for the departure was a determination that his offense was committed as part of a "pattern of criminal conduct" under Minn.Stat. § 609.1095, subd. 4 (2002), appellant argues that it was error for this factor to have been decided by a judge rather than a jury. Appellant contends that *Blakely* should be given retroactive effect in his collateral attack on the sentence, singularly because Justice O'Connor's dissent noted that the rule would apply to any decision occurring after *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). *Blakely*, — U.S. at ——, 124 S.Ct. at 2549 (O'Connor, J., dissenting). We observe initially that Justice O'Connor's observation was simply that sentencing guidelines since *Apprendi* are arguably open to collateral attack. Because of this and other observations about *Blakely*, we reject appellant's arguments that the decision be applied retroactively.

■ Whether or not a decision applies retroactively is a question we are to review de novo. *State v. Costello*, 646 N.W.2d 204, 207 (Minn.2002). The Supreme Court has stated two exceptions to the general rule that new rules of law are not retroactively applicable to cases on collateral review. *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). To fit under the first exception, the rule must place "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." *Id.* at 311, 109 S.Ct. at 1075 (quotation & citation omitted). Alternatively, under the second exception, "a new rule [will] be applied retroactively if it requires the observance of those procedures that ... are implicit in the concept of ordered liberty," and the procedure must implicate the fundamental fairness of

a trial. *Id.* at 311, 109 S.Ct. at 1076 (quotation & citation omitted).

■ Under *Teague*, a holding constitutes a new rule if "it breaks new ground, imposes a new obligation on the States or the Federal Government, or was not dictated by precedent existing at the time the defendant's conviction became final." *O'Meara v. State*, 679 N.W.2d 334, 339 (Minn.2004) (quotation & citation omitted). We held that *Apprendi* announced a new constitutional rule because it was not dictated by existing precedent and "unmistakably altered the legal landscape." *Id.*; *see also Meemken v. State*, 662 N.W.2d 146, 149 (Minn.App.2003) (stating that *Apprendi* was not dictated by existing precedent). We further held that *Apprendi* did not fall within the two *Teague* exceptions and refused to apply the rule retroactively. *Meemken*, 662 N.W.2d at 149. The rule announced in *Apprendi* neither defined a new offense, thereby falling within the first *Teague* exception, nor altered our understanding of "the bedrock procedural elements essential to the fairness of trial" under the second exception. *Id.* Similarly, we have refused retroactive application of *Blakely* to a conviction that was final before *Apprendi*. *State v. Petschl*, 688 N.W.2d 866 (Minn.App.2004) (holding that *Blakely* was not dictated by precedent existing before *Apprendi*).

Because appellant was sentenced after *Apprendi*, the question in this case is whether *Blakely* is a new rule or was "dictated" by *Apprendi*, merely modifying the *Apprendi* rule that governs this case, and, if a new rule, whether it falls within either of the *Teague* exceptions. Although there is dispute as to whether *Blakely* was "dictated" by the holding of *Apprendi*, the more persuasive view is that it was not.

---

ly and inexcusably fail to raise the *Apprendi* claim on his direct appeal. Thus, his case

comes within an exception to the *Knaffla* procedural bar.

■ The specific holding of *Apprendi* was that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum ... must be submitted to a jury and proved beyond a reasonable doubt." 530 U.S. at 466, 120 S.Ct. at 2350. In *Blakely,* the Supreme Court invalidated the Washington sentencing guidelines provision allowing a judge to depart upward from the presumptive sentence based on judicial findings rather than findings by a jury. —— U.S. at ——, 124 S.Ct. at 2538. The Court stated that, for *Apprendi* purposes, the statutory maximum is "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Id.* at ——, 124 S.Ct. at 2537 (emphasis omitted). In *Blakely,* the Court did not claim that *Apprendi,* by itself, provided sufficient grounds to hold that a presumptive guidelines sentence was the "statutory maximum." As Justice O'Connor's dissent notes, the great majority of courts have held that *Apprendi* did not invalidate upward departures under sentencing guidelines schemes based on judicial findings. *Id.* at ——, 124 S.Ct. at 2549 (O'Connor, J., dissenting). Further, this court has joined the majority in reading the *Apprendi* term "prescribed statutory maximum" in a literal fashion as referring to the statutory maximum, not the "sentencing-grid maximum" or presumptive sentence. *See State v. McCoy,* 631 N.W.2d 446, 450–51 (Minn.App.2001) (concluding that the statutory maximum is dictated by the statute for the charged offense, not the sentencing guidelines).

■ Finally, the *Blakely* decision, like *Apprendi,* does not fall within the *Teague* exceptions to the general rule of non-retroactive application. It does not impact the scope of government power to proscribe crime. And we have recently held that

*Blakely* is not a watershed rule that alters the understanding of the basic procedures essential to the fairness of a criminal conviction. *Petschl,* 688 N.W.2d at 875. *Blakely* is not subject to retroactive application on collateral review, and appellant is not entitled to a jury trial on the grounds for his sentencing departure.

## II.

■ Appellant next argues that his sentence was excessive because new legal authority limits the discretion of the district court to impose the statutory maximum sentence under a statutory enhancement provision. Appellant relies on the Minnesota Supreme Court case of *Neal v. State,* 658 N.W.2d 536 (Minn.2003), and argues that, because *Neal* was unavailable at the time of his direct appeal, his claims bypass the *Knaffla* procedural bar.[2]

*Neal* involved an offender convicted and sentenced on a kidnapping charge where he restrained the victim for a short period of time, did not remove the victim from the scene, and confined the victim solely to facilitate the commission of the crime of robbery. *Id.* at 540–41. The supreme court held that the 480–month sentence, more than four times the presumptive sentence, was excessive, and the court remanded to the trial court for determination of a reasonable sentence. *Id.* at 549. Appellant's reliance on *Neal* is misplaced for two reasons. First, *Neal* simply reinforced the importance of using caution when approaching the statutory maximum sentence and ensuring that sentences are proportional to the gravity of the offense. *See State v. Smallwood,* 594 N.W.2d 144, 157 (Minn.1999) (holding that a reviewing court "will not interfere with a trial court's discretion in sentencing unless the sentence is disproportionate to the offense.").

**2.** See footnote 1.

*Neal* reiterates the proportionality requirement, and it does not present a "novel legal claim" necessary to overcome the *Knaffla* procedural bar. Second, the analysis of the court and its conclusion regarding the kidnapping sentence stemmed uniquely from the "minimal statutory requirements of kidnapping," standards that could lead, in some pertinent circumstances, to unfairly exaggerating the offender's criminality. *Neal,* 658 N.W.2d at 547. The analysis in *Neal* has no relevance to appellant's drug offense sentence.

 Finally, appellant raises multiple issues in his pro se supplemental brief: (1) that his conviction for an attempted controlled substance crime does not constitute a "subsequent controlled substance conviction" under Minn.Stat. § 152.021, subd. 3(b) (2002); (2) that the district court improperly applied the career-offender statute to the facts of his case, (3) that he was denied the effective assistance of counsel; (4) that the sentence enhancers in Minn. Stat. § 609.1095, subds. 2, and 3, do not apply to the facts of his case;[3] (5) that he is the victim of vindictive sentencing; and (6) that he was subject to double jeopardy because he was acquitted of controlled substance crime in the first degree but convicted of attempted controlled substance crime in the first degree.

All of the issues raised by appellant were either raised on direct appeal or could have been raised on direct appeal. Therefore, they need not be addressed as they are all procedurally barred under *Knaffla,* 309 Minn. at 252, 243 N.W.2d at 741.

## DECISION

Appellant was not entitled to a jury trial in his 2002 sentencing. Further, because

appellant has offered no new legal authority allowing him to challenge the length of his sentence and because the other claims raised by appellant are procedurally barred under *Knaffla,* we affirm the district court's decision as to appellant's conviction and sentence.

**Affirmed.**

---

**3.** Appellant was sentenced under Minn.Stat. § 609.1095, subd. 4, only. As such, this argu-

ment is without merit.